FILIPPATOS PLLC
Parisis G. Filippatos (PF1593)
303 Park Avenue South, Suite 1422
New York, New York 10010
(212) 682-2400
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOHN L. PETEREC-TOLINO,                                              08-CV-0891 (SCR) (MDF)

                                    Plaintiff,

       - against -

COMMERCIAL ELECTIRCAL CONTRACTORS, INC.,
CIRO LUPO, STEVEN LONDON, ARTHUR LOWETH,
and EDWARD HARAP,

                                    Defendants.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### PRELIMINARY STATEMENT

The instant federal action should be dismissed in its entirety against all defendants – both corporate and individual -- on the basis of issue and claim preclusion and against the individual defendants because under controlling precedent no federal cause of action can lie against them.

### STATEMENT OF FACTS

According to the federal complaint filed by plaintiff *pro se,* he was wrongfully terminated by defendants despite being able to do his job with reasonable accommodation regarding "lifting carrying, and transporting items". See Complaint for Employment

Discrimination, dated January 9, 2008, at 3, a copy of which is annexed as Exhibit F to the Declaration of Parisis G. Filippatos, dated July 30, 2008 ("Filippatos Dec."). Moreover, plaintiff *pro se* was allegedly subjected to unequal terms and conditions of employment, retaliation, and a "hostile workforce" on the basis of his age (48 years) and disability ("asthma, spinal curvature, injury"). Filippatos Dec. Exhibit F at 2-3. Finally, plaintiff *pro se* alleges that he was "harassed, threatened, and terminated" by defendants because of an injury that occurred on the job on July 6, 2006. Filippatos Dec. Exhibit F at 3.

Approximately six months prior to filing the instant federal complaint alleging employment discrimination, plaintiff *pro se* commenced a similar action in state court alleging wrongful termination against the same defendants. See Summons and Complaint, dated July 2, 2007, a copy of which is annexed as Exhibit A to the Filippatos Dec.

According to his state court complaint, see Filippatos Dec. Exhibit A, *passim*, plaintiff *pro se* makes the following allegations: (a) defendant Edward Harap was "a member of Local Union #3 of the International Brotherhood of Electrical Workers … [and was] employed by Commercial Electrical Contractors, Inc. … as [a] foreman"; (b) from July 3-7, 2006, Mr. Harap was the immediate supervisor of plaintiff *pro se* at a construction project at the Dalton School of Music in New York City; (c) plaintiff *pro se* has been a member of Local Union #3 of the International Brotherhood of Electrical Workers for nine years and had never received a "termination for cause" or a "bad layoff" until July 7, 2006, when Mr. Harap signed a termination sheet that stated plaintiff *pro se* was "unproductive", "had to be told what to do", and "was not someone to mess

with"; (d) defendant Arthur Loweth was superintendent at the Dalton Music School project where plaintiff *pro se* worked and, as such, was Mr. Harap's immediate supervisor who approved the "bad layoff" of plaintiff *pro se*; (e) Mr. Harap "deliberately in his general statement of termination set-out to portray … [plaintiff *pro se*] in an extremely unfavorable light … thus putting his career in serious jeopardy"; (f) Mr. Harap "lied on his termination sheet" based on a contradictory statement made by Mr. Harap during the Workers Compensation hearing held on February 27, 2007, regarding the on-the-job injury plaintiff *pro se* suffered on July 7, 2006; (g) Mr. Loweth falsely accused plaintiff *pro se* of threatening him although he never filed a police report and it was actually Mr. Loweth who threatened plaintiff *pro se*; (h) plaintiff *pro se* was injured on the job on or about July 7, 2006, and was unable to return to work for nine months, which was the reason that Mr. Harper and Mr. Loweth "both retaliated as a result to conspire against [p]laintiff [*pro se*]"; (i) defendant Ciro Lupo and defendant Steven London "are owners of Commercial Electrical Contractors Inc.," which "employed Plaintiff" and "as a corporation … acted in concert to conspire with defendants … deliberately and intentionally and through direct malice to cause harm to [p]laintiff [*pro se*]"; (j) Mr. Lupo "took it upon himself to hand deliver a multi-page bad report statement about [p]laintiff [*pro se*] with all the baseless assertions" via Mr. Harap and Mr. Loweth to John DiTusa, an official of the Grievance Department of Local #3; (k) Mr. Lupo also falsely stated to Local #3 that the wife of plaintiff *pro se* threatened legal action when she called his company and spoke to Mr. London; and (l) Mr. London told the wife of plaintiff *pro se* that he wanted plaintiff *pro se* "out of the electrical industry."

    Thus the gravamen of the state and federal complaints filed by plaintiff *pro se* is

his disagreement with defendants' decision to terminate his employment "for cause". However, as established herein plaintiff *pro se* states no legally cognizable claim in this regard.[1] Indeed, upon a full and fair opportunity for each party to be heard, which parties were identical to the parties in this federal action, the state court dismissed each and every claim asserted by plaintiff *pro se* against each and every defendant because the state court complaint alleging wrongful termination and defamation did not state viable claims. See Decision and Order of the Hon. Valerie Brathwaite Nelson, New York State Supreme Court, Queens County, dated April 16 and filed on April 24, 2008, at 1 and 6, a copy of which is annexed as Exhibit B to the Filippatos Dec.

## ARGUMENT

### POINT I

### THE FEDERAL DISCRIMINATION CLAIMS ASSERTED BY PLAINTIFF PRO SE SHOULD BE DISMISSED AGAINST ALL INDIVIDUAL DEFENDANTS AS A MATTER OF LAW.

A.   The Standard for Dismissal Under Fed. R. Civ. Pro. 12(b)(6)

Under Federal Rule of Civil Procedure ("Fed. R. Civ. Pro.") 12(b)(6), a complaint may be dismissed "for failure of the pleading to state a claim upon which relief can be granted." While a complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" and "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,'" see Erickson v. Pardus, --- U.S. ----, ----, 127 S.Ct. 2197, 2200 (2007) (quoting Bell Atl. Corp. v. Twombly, --- U.S. ----, ---- - ----, 127 S.Ct. 1955,

---

[1] Generally, the law in New York as to at-will employees, like plaintiff *pro se*, is that they can be fired at any time without reason. Horn v. New York Times, 100 N.Y.2d 85, 90-91 (2003).

4

1965-66 (2007)), the Second Circuit has recently reaffirmed that "at a bare minimum, the operative standard requires the 'plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level,'" see Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)); accord Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1088 (2d Cir.1995); Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978).

Granted that in adjudicating a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), the Court should make all reasonable inferences in the plaintiff's favor, see Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002); Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993), and that the requirement to draw all possible inferences in the plaintiff's favor is at its zenith when the plaintiff is proceeding *pro se*, see Haines v. Kerner, 404 U.S. 519, 520 (1972); Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007); Branham v. Meachum, 77 F.3d 626, 628-29 (2d Cir. 1996); Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1099 (2d Cir. 1988), cert. denied sub nom., Soifer v. Bankers Trust Co., 490 U.S. 1007, 109 S.Ct. 1642 (1989).

Moreover, "[i]n assessing the legal sufficiency of a claim, the Court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference ... and documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference." John v. N.Y. City Dep't of Corrections, 183 F. Supp.2d 619, 627 (S.D.N.Y. 2002); see also Gregory v. Daly, 243 F.3d 687, 691 (2d

Cir. 2001); Leonard F. v. Israel Discount Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999); Johnson v. Wright, 234 F. Supp.2d 352, 356 (S.D.N.Y. 2002). Indeed, reviewing the proposed pleading under Rule 12(b)(6), the Court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Jaghory v. New York State Dep't of Ed., 131 F.3d 326, 329 (2d Cir. 1997); accord Koppel v. 4987 Corp., 167 F.3d 125, 127 (2d Cir.1999); LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991)).

In short, the Court should dismiss the complaint pursuant to Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. See King v. Simpson, 189 F.3d 284, 286 (2d Cir. 1999); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Nevertheless, plaintiff *pro se* has failed herein to meet even this minimal burden and his complaint should be dismissed because it will be demonstrated "beyond doubt that ... [he] can prove no set of facts in support of his claim which would entitle him to relief.'" Padavan v. United States, 82 F.3d 23, 26 (2d Cir. 1996) (quoting Hughes v. Rowe, 449 U.S. 5, 10, 101 S.Ct. 173 (1980)).

B.  No Claim Can Lie Against the Individual Defendants Under the Federal Antidiscrimination Statutes Sued Upon Herein

It is well-settled in the Second Circuit that "'individuals are not subject to liability under Title VII.'" Patterson v. Cty. of Oneida, New York, 375 F.3d 206, 221 (2d Cir. 2004) (citing Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000)); see also Schiano v. Quality Payroll Sys., 445 F.3d 597, 608 n. 8 (2d Cir. 2006) ("individual defendant

cannot be held personally liable under Title VII"); Arculeo v. On-Site Sales & Marketing, LLC, 425 F.3d 193, 196 n. 2 (2d Cir. 2005) ("Title VII, while imposing liability on employers, does not impose liability on the supervisory personnel of employers"); Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) ("under Title VII individual supervisors are not subject to liability"); Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995) ("individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII") (abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257 (1998)).

Accordingly, the ADA and ADEA claims of plaintiff *pro se* against individual defendants Ciro Lupo, Steven London, Arthur Loweth, and Edward Harap, respectively, must be dismissed in their entirety.[2]

### POINT II

### ALL ISSUES AND CLAIMS ASSERTED BY PLAINTIFF PRO SE IN THIS FEDERAL ACTION ARE PRECLUDED BY THE DISMISSAL OF HIS PRIOR STATE COURT ACTION ARISING OUT OF A COMMON NUCLEUS OF OPERATIVE FACTS AND INVOVING THE IDENTICAL PARTIES HEREIN.

A.   Rule 12(b)(6) Dismissal Based on Issue or Claim Preclusion

It is well established in the Second Circuit that "the defense of *res judicata* or collateral estoppel may be brought under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment". Sassower v. Abrahams, 833 F. Supp. 253, 264 (S.D.N.Y. 1993); see also Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1991)

---

[2] The well-established rule that Title VII does not impose liability upon individuals has been applied to claims asserted against individuals under the ADEA, see Bottge v. Suburban Propane, 77 F. Supp.2d 310, 310-11 (N.D.N.Y. 1999); Pemrick v. Stracher, 67 F. Supp.2d 149, 169 (E.D.N.Y. 1999); LeyKis v. NYP Holdings, Inc., 899 F. Supp. 986, 991 (E.D.N.Y. 1995), as well as the ADA, see Corr v. MTA Long Island Bus Co., 27 F. Supp.2d 359, 370 (E.D.N.Y. 1998), aff'd, 199 F.3d 1321 (2d Cir. 1999).

7

("when all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of *res judicata*] may be upheld on a Rule 12(b)(6) motion without requiring an answer").

B.   *Res Judicata* and Collateral Estoppel

The Full Faith and Credit Act, 28 U.S.C. §1738, has long been understood to encompass the doctrines of claim preclusion (*res judicata*) and issue preclusion (collateral estoppel) and to require that federal courts not grant a forum to litigants whose claims have previously been resolved in state court. See San Remo Hotel, L.P. v. City & County of San Francisco, Cal., 545 U.S. 323, 336-38, 125 S.Ct. 2491, 2500-02 (2005) (holding that the full faith and credit statute encompasses the doctrines of claim and issue preclusion and specifically declining to carve out an exception "to provide a federal forum for litigants who seek to advance federal takings claims that are not ripe until the entry of a final state judgment denying just compensation"). A federal court considering the preclusive effect of a state court judgment looks to the law of the state in which the judgment was rendered. Ferris v. Cuevas, 118 F.3d 122, 125-26 (2d Cir. 1997) ("we give preclusive effect to a state court judgment whenever the courts of that state would do so").

*Res judicata* is a salutary judicial doctrine that reflects "considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719 (1948). Thus, "a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the

second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect to all matters properly put in issue and actually determined by them." Southern Pacific Railroad Co. v. United States, 168 U.S. 1, 48-49, 18 S.Ct. 18, 27 (1897); see also Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 578-79, 94 S.Ct. 806, 811-12 (1974).

Thus, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428 (1981). Simply put, the doctrine states that once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning "the transaction, or series of connected transactions, out of which the [first] action arose." Restatement (Second) of Judgments §24(1) (1982).

In Kremer v. Chemical Const. Corp., 456 U.S. 461, 102 S.Ct. 1883, 1889 (1982), the Supreme Court held that because Title VII does not create an exception to the requirement in 28 U.S.C. §1738 that a federal court give "the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from

which the judgments emerged," a federal court in a federal antidiscrimination case must give preclusive effect to a decision of a state court upholding a state administrative agency's rejection of an employment discrimination claim. Id. at 463, 102 S.Ct. at 1888; accord Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 85, 104 S.Ct. 892, 898 (1984) (state court judgment has same claim preclusive effect on §1983 suit in federal court that it would have in state court); Allen v. McCurry, 449 U.S. 90, 104, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980) (collateral estoppel requires federal court to give preclusive effect in §1983 suit to issues previously decided by state courts); Sinicropi v. Nassau Cty., 601 F.2d 60, 62 (2d Cir.) (*per curiam*) (where adverse determination of plaintiff's discrimination claim by the NYSDHR and the New York State Human Rights Appeals Board was affirmed by the New York Appellate Division, Title VII claim barred by *res judicata*), cert. denied, 444 U.S. 983, 100 S.Ct. 488 (1979).

The Supreme Court in Kremer also made clear that the litigant against whom preclusion is sought in federal court must have been afforded a "full and fair opportunity" to litigate his claims in the prior state proceedings. Kremer, 102 S.Ct. at 1897. The Supreme Court has subsequently suggested that although Kremer declined to decide whether Title VII claims can be brought only in federal courts, "state law determines at least the issue preclusive effect of a prior state judgment in a subsequent action involving a claim within the exclusive jurisdiction of the federal courts." Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 381, 105 S.Ct. 1327, 1332 (1985).

In this case, the result is the same whether *res judicata* (claim preclusion) or collateral estoppel (issue preclusion) applies: plaintiff *pro se* is precluded from relitigating the claims of "wrongful" (i.e., discriminatory) discharge in federal court that

he previously asserted in state court.

C.  Both Claim and Issue Preclusion Bar Plaintiff *Pro Se* from Relitigating his Claims

Under the doctrine of *res judicata*, "once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose." Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997).  The doctrine of *res judicata* prevents a plaintiff from litigating claims that were or could have been raised in a prior action against the same defendant.  L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 87-88 (2d Cir.1999) (*per curiam*). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." Id. at 88; see also Kent v. New York City Dept. of Sanitation, 549 F. Supp. 570, 572 (S.D.N.Y. 1982) (plaintiff could not relitigate in federal court claims that were nearly identical to those decided adversely to plaintiff in state court); accord Prasad v. Wassaic Developmental Center, 546 F. Supp. 679, 680 (S.D.N.Y. 1982).  Thus, "a prior decision dismissed 'on the merits' is binding in all subsequent litigation between the same parties on claims arising out of the same facts, even if based upon different legal theories or seeking different relief on issues which were or might have been litigated in the prior action but were not." Northern Assurance Co. of America v. Square D Co., 201 F.3d 84, 87 (2d Cir. 2000) (quoting EFCO Corp. v. U.W. Marx, Inc., 124 F.3d 394, 397 (2d Cir.1997)); Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86 (2d Cir. 1997); see also Reilly v. Reid, 45 N.Y.2d 24, 30 (1978) ("where the same foundation facts serve as a predicate for each proceeding, differences in legal theory and consequent remedy do not create a separate cause of action").